DAVID A. HUBBERT
Deputy Assistant Attorney General

OLGA L. TOBIN
GOKCE T. YUREKLI
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
Tel: (202) 532-5123
Fax: (202) 514-6866
Olga.L.Tobin@usdoj.gov
Gokce.T.Yurekli@usdoj.gov
*Counsel for the United States of America*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. ) ) |
| FAVI CAHAN, | ) ) ) |
| Defendant. | ) ) |

**COMPLAINT**

Plaintiff, the United States of America, at the request and with the authorization of a delegate of the Secretary of the Treasury, and at the direction of the Attorney General of the United States, brings this action to collect the penalties assessed under 31 U.S.C. § 5321(a)(5) against Defendant Favi Cahan for his willful failure to report his interest in a foreign financial account from 2005 through 2008. In support of this action, the United States alleges as follows:

## Jurisdiction and Venue

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and 1395(a).

## Parties

3. Plaintiff is the United States of America.

4. Defendant Favi Cahan resides at 2211 Ponybrook Way, Toms River, New Jersey.

## Regulatory Background

5. All citizens and residents of the United States who have a financial interest in, or signature or other authority over, foreign financial accounts with an aggregate maximum value of greater than $10,000 at some point during the calendar year are required to file an annual report disclosing the existence of each account. 31 U.S.C. § 5314; 31 C.F.R. § 1010.350; 31 C.F.R. § 1010.306.

6. For the 2005 through 2008 years, the annual report, known as a Report of Foreign Bank and Financial Accounts ("FBAR") for a calendar year was due no later than June 30 of following the calendar year. 31 C.F.R. § 1010.306(c).

7. Schedule B is an attachment to the individual federal income tax return (Form 1040) that is used for reporting, among other things, interest and dividend income, as well as any financial interest in or signature or other authority over financial accounts located in foreign countries. For the 2005 through 2008 years, Schedule B

referred to the FBAR filing requirement and alerted the taxpayer that if he or she had an interest in or signature or other authority over a financial account located in a foreign country the taxpayer should file an FBAR, referred to as Form TD F 90-22.1.

**Favi Cahan's Failure to Report His Interest in a Foreign Financial Account**

8.  In or around 1990, Favi Cahan obtained a green card and became a permanent resident of the United States. From 2005-2008, Favi was a permanent resident of the United States. Favi obtained United States citizenship in or around May 2015.

9.  While traveling to Switzerland in 1997, Favi opened a numbered account at UBS with an account number ending in x8757 (the Swiss UBS Account).

10. The balance of the Swiss UBS account as of December 31, 1997 was about $2.1 million.

11. At the time he opened the Swiss UBS account, Favi granted a power of attorney to his brother Jehuda Cahan and a power of attorney for the management of assets for external asset managers to Felix Kramer.

12. In the account opening documents for the Swiss UBS account, Favi indicated that all correspondence was to be sent to Kramer at Vermogensverwaltungen, Bettenen 3, 8706 Meilen, Postfach 526. He also executed a separate document directing mailing of correspondence to Kramer.

13. At the time he opened the Swiss UBS account, Favi executed a verification of the beneficial owner's identify identifying himself as the beneficial owner of the assets deposited with the bank.

14. On October 10, 2001, Favi traveled to Zurich, Switzerland where he executed a document with respect to the Swiss UBS account directing UBS to neither acquire US securities nor to hold them.

15. On August 18, 2003, UBS issued a letter to Favi as to the Swiss UBS account that, starting January 1, 2004, UBS "will only be able to execute outgoing cross-border payment order from your numbered account if the name of the account holder is indicated on the payment order."

16. On December 12, 2003, Favi traveled to Zurich, Switzerland and executed with respect to the Swiss UBS account a "Basic document for Account/Custody Account." He again directed that all correspondence be sent to Kramer of Chartvalor AG in Zurich  He also executed a general power of attorney in favor of his brother Jehuda and a power of attorney for the management of assets for financial intermediaries in favor of Chartvalor AG.

17. From 2005 through 2008, Favi had an interest, signatory authority, or other authority over the Swiss UBS Account.

18. From 2005 through 2008, the total aggregate balance in the Swiss UBS Account was over $10,000.

19. From 2005-2008, Favi directed 19 transfers out of the Swiss UBS account. The balance in the Swiss UBS Account started at about $1.9 million at the beginning of 2005 and decreased down to about $1 million by the end of 2008.

20. Favi would periodically contact Kramer to check on the Swiss UBS account holdings and investments.

21. On March 26, 2008, Favi signed a Telefax-Agreement in Brussels permitting UBS to communicate with him as to the Swiss UBS account via facsimile.

22. In July 2008, UBS publicly announced that it would no longer provide cross-border services to U.S. domiciled private clients.

23. In 2008, Favi opened another account in his name in Switzerland at Neue Privat Bank AG.

24. On December 10, 2008, Favi executed instructions to transfer all the assets from the Swiss UBS Account to the Neue Privat Bank account.

25. Sometime before Favi opened an account with Neue Privat Bank and instructed UBS to transfer the assets to the new account, he learned from the news that he could be in trouble for having signature authority over a UBS account. Around the same time, Kramer notified Favi that he could no longer maintain an account at UBS. Kramer further informed Cahan that he would send him a check with the UBS account holdings to Favi's address if he did not travel to Switzerland and withdraw the assets. Kramer told Cahan that no one wants to touch anything to do with Americans and advised him that he found one bank temporarily willing to take the funds in Favi's Swiss UBS account. Favi then traveled to Zurich, Switzerland and opened an account at Neue Privat Bank.

26. On March 27, 2009, UBS notified Favi by letter that UBS will no longer provide services to him and that he must transfer all positions held in his Swiss UBS account to another financial institution. UBS further advised Favi to consult with a U.S. Tax advisor to determine the tax consequences related to his account, including

5

additional U.S. Tax filing or other disclosure obligations. UBS also asked Favi for consent to provide account information to the IRS in connection with a John Doe summons.

27. On July 31, 2009, UBS notified Favi by letter that it was issued a John Doe summons seeking records related to U.S. taxpayers who had accounts with signature or other authority with UBS in Switzerland. UBS further informed Favi of the IRS voluntary disclosure program.

28. Favi's Swiss UBS Account was terminated in 2009.

29. Favi's income tax returns for 2005 through 2008 were prepared by Matthew Ettinger (Ettinger). Ettinger sent out questionnaires to his clients that asked whether clients own a foreign account. Favi filled out and returned the questionnaires. Favi did not inform Ettinger that he had an interest in a foreign bank account for 2005-2008.

30. Favi timely filed his 2005 federal income tax return. His federal income tax return for 2006 was filed on September 2, 2015. His federal income tax return for 2007 was filed on July 30, 2009. His federal income tax return for 2008 was filed on May 5, 2010.

31. Favi attached a Schedule B to his federal income tax returns for 2005, 2007, and 2008. On each Schedule B, he checked "No" in response to the question that asked whether he had an interest in or authority over a foreign financial account.

32. Favi did not attach a Schedule B with his federal income tax return for 2006.

33. In Favi's federal income tax returns for 2005, 2007 and 2008, Favi included domestic sourced interest and dividend earnings but omitted interest and dividend earnings from the Swiss UBS Account.

34. Favi did not timely file FBARs for 2005 through 2008.

35. Favi's failure to timely report his interest in the UBS Account for each of the 2005 through 2008 calendar years was willful for the reasons including but not limited to the reasons stated in paragraphs 9 – 34.

### Count I:  Judgment for Civil Penalties Assessed Against Favi Cahan

36. On March 19, 2020, a delegate of the Secretary of the Treasury assessed civil penalties against Favi Cahan under 31 U.S.C. § 5321(a)(5) in the amounts of: $425,075 for 2005; $425,075 for 2006; $425,075 for 2007; and $100,000 for 2008, for a total assessed amount of $1,375,225.

37. A delegate of the Secretary of the Treasury sent notice of the assessments to Favi Cahan and demanded payment of the assessments on July 23, 2020.

38. Despite notice and demand, Favi Cahan has failed to fully pay the penalties described in Paragraph 36, above.

39. Interest and late-payment penalties have accrued, and will continue to accrue, on the penalties described in Paragraph 36, above, pursuant to 31 U.S.C. § 3717 until they are paid in full.

40. As of March 16, 2022, Favi Cahan is indebted to the United States with respect to the penalties described in Paragraph 36, above, in the amount of

$1,556,377.93, plus statutory additions that continue to accrue thereafter as provided by law.

WHEREFORE, the United States respectfully asks that the Court:

    A.    Enter judgment in favor of the United States and against Favi Cahan, with respect to the civil penalty assessments described in Paragraph 36, above, in the amount of $1,556,377.93 as of March 16, 2022, plus statutory interest and other additions to tax accruing thereafter according to law until paid in full;

    B.    Award the United States its costs incurred in prosecuting this action; and

    C.    Such other and further relief as the Court deems just and proper.

Dated: March 17, 2022

DAVID A. HUBBERT
Deputy Assistant Attorney General

*/s/ Olga L. Tobin*
OLGA L. TOBIN
GOKCE T. YUREKLI
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
Tel: (202) 532-5123
Fax: (202) 514-6866
Olga.L.Tobin@usdoj.gov
Gokce.T.Yurekli@usdoj.gov
*Counsel for the United States of America*

**DESIGNATION UNDER LOCAL RULE OF CIVIL PROCEDURE 101.1(f)**

In accordance with Local Rule of Civil Procedure 101.1(f), the undersigned hereby designate the United States Attorney for the District of New Jersey to receive service of all notices or papers in this action at the following address:

Chief, Civil Division
United States Attorney's Office
District of New Jersey
970 Broad Street, Ste. 700
Newark, New Jersey 07102

/s/ Olga L. Tobin
OLGA L. TOBIN
GOKCE T. YUREKLI
Trial Attorneys, Tax Division
U.S. Department of Justice

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, I certify that the matter in controversy alleged in the foregoing Complaint is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

>*/s/ Olga L. Tobin*
>OLGA L. TOBIN
>GOKCE T. YUREKLI
>Trial Attorneys, Tax Division
>U.S. Department of Justice